# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Access Personnel Services, Inc. )  ASBCA No. 59900
)
Under Contract No. N00189-09-C-Z114 )

APPEARANCE FOR THE APPELLANT:  Mr. Tyrone G. Miller
CEO

APPEARANCES FOR THE GOVERNMENT:  Ronald J. Borro, Esq.
Navy Chief Trial Attorney
Paul C. Scheck, Esq.
Attorney Advisor
NAVSUP Fleet Logistics Center Norfolk
Philadelphia, PA

## OPINION BY ADMINISTRATIVE JUDGE MCNULTY

This appeal involves the performance of above-captioned personnel services contract (the contract) for services supporting the Naval Supply Systems Command Fleet Logistics Center's Naval Inventory Control Point. The contract is a negotiated Small Business Administration Section 8(a) set aside. The dispute arises from the disallowance of some of the contractor's subcontractor costs, involving the interpretation of Federal Acquisition Regulation (FAR) 52.232-7, PAYMENTS UNDER TIME-AND-MATERIALS AND LABOR-HOUR CONTRACTS (DEC 2002), (the Payments clause). The parties elected to proceed under Board Rule 11. The government also incorporated a motion for summary judgment with its Rule 11 brief. We decide entitlement only and, because we find the government failed to pay appellant in accordance with the Payments clause of the contract, we sustain the appeal.

## FINDINGS OF FACT

1. On 29 September 2009, the contract was awarded to Access Personnel Services, Inc. (APS or appellant) (R4, tab 1). The contract was a time-and-materials type contract, which incorporated by reference the Payments clause (R4, tab 1 at 36). The contract indicated that 23 full-time equivalents would be required to perform the contract in specific labor categories as follows: four for CAV, two for Carcass Tracking, three for SIT, one for IWST SSS, two for Code 0341, one for Code 0363, two for Code 03621, and eight for Code 02 DoD Acquisition[1] (R4, tab 1 at 16-17).

---

[1] The Performance Work Statement includes descriptions of the duties to be performed and the skill sets necessary for each of these labor categories (*see*

The contract's performance period was for twelve months measured from the date of award (R4, tab 1 at 25).

2. The contract included an estimated number of total labor hours, a ceiling amount and hourly labor rates for contract line item number (CLIN) 0001 negotiated by the parties as follows:

|  | Hourly Labor Rate | Estimated Labor Hours | Ceiling Amount |
|---|---|---|---|
| CAV Analyst (College Trainees) | $33.02 | 8,000 | $264,160.00 |
| Carcass Tracking Specialist 1 | 70.25 | 2,000 | 140,500.00 |
| Carcass Tracking Specialist 2 | 63.23 | 2,000 | 126,460.00 |
| SIT Specialist 1 | 70.25 | 2,000 | 140,500.00 |
| SIT Specialist 2 | 63.23 | 4,000 | 252,920.00 |
| IWST SSS | 59.71 | 2,000 | 119,420.00 |
| Code 0341 Specialist | 59.71 | 4,000 | 238,840.00 |
| Code 0363 Specialist | 59.71 | 2,000 | 119,420.00 |
| Code 03621 Specialist | 66.74 | 4,000 | 266,960.00 |
| Code 02 Acquisition Specialist 1 | 63.23 | 4,000 | 252,920.00 |
| Code 02 Acquisition Specialist 2 | 59.71 | 4,000 | 238,840.00 |
| Code 02 Acquisition Specialist 3 | 56.20 | 8,000 | 449,600.00 |
| Contract Management | 100.00 | 240 | 24,000.00 |
| Total Estimated Hours and Ceiling | | 46,240 | $2,634,540.00 |

(R4, tab 1 at 4)

3. In accordance with the Payments clause, the hourly rates the contractor was to charge the government were to include wages, indirect costs, general and administrative expense, and profit. FAR 52.232-7, in pertinent part, also provided with respect to subcontract costs:

> (4)(i) The Government will reimburse the Contractor for costs of subcontracts that are authorized under the subcontracts clause of this contract, provided that the costs are consistent with paragraph (b)(5) of this clause.
>
> (ii) The Government will limit reimbursable costs in connection with subcontracts to the amounts paid for

R4, tab 1 at 5-19). Resolution of the dispute does not require that we discuss these in the opinion.

> supplies and services purchased directly for the contract when the Contractor has made or will make payments determined due of cash, checks, or other forms of payment to the subcontractor-
>
> ....
>
> (iii) The Government will not reimburse the Contractor for any costs arising from the letting, administration, or supervision of performance of the subcontract, if the costs are included in the hourly rates payable under paragraph (a)(1) of this clause.

(R4, tab 11 at 14)

4. Under date of 6 October 2009, APS entered into a subcontract agreement with Professional Services of America, Inc. (PSA) to perform up to 49% of the work under the contract (R4, tab 10).

5. The contract between APS and the government included FAR 52.219-12, SPECIAL 8(a) SUBCONTRACT CONDITIONS (FEB 1990), which requires a contractor to obtain written consent from the contracting officer before subcontracting with a lower tier subcontractor[2] (R4, tab 1 at 32-33). Although APS did not seek prior written consent to subcontract with PSA, the contracting officer subsequently ratified APS having done so (R4, tab 16). Neither the Defense Contract Audit Agency (DCAA), nor the contracting officer raised APS's failure to obtain prior written consent to subcontract as a basis for disallowing APS's subcontract costs, although the failure to obtain such consent was asserted by the DCAA as the basis for disallowing all of the costs charged by another of APS's lower tier subcontractors, Burr Business Solutions (BBS)[3] (R4, tabs 2, 6, 8).

---

[2] Pursuant to the Special 8(a) Subcontract Conditions clause APS is recognized as a subcontractor to an agreement between the Small Business Administration and the Navy's FISC Norfolk Philadelphia Office.

[3] The contracting officer also ratified APS's election to subcontract with BBS and issued a modification establishing labor categories and hourly rates to be used by APS to bill the government for BBS's services (R4, tab 6). The record includes no evidence that a similar modification was issued with respect to PSA. In its brief, the government hints at suggesting APS's failure to obtain written consent to subcontract as a basis for denying the appeal (gov't br. at 7, 14-15, 31). Had this argument been fully developed we would not have found it persuasive given the contracting officer's ratification of APS's subcontract agreement with PSA.

3

6. With respect to pricing, the subcontract agreement with PSA included a table setting forth how the parties would divide the work responsibility under the contract by labor category and the annual fee for the personnel associated with each of the contract's labor categories (R4, tab 10). The agreement stated:

Examples of Subcontractor's fees for providing contract employees pursuant to this Agreement are as follows:

| | Job Titles | Tasked to PSA Or Access | Access Bill Rate 51% | PSA Bill Rate 49% |
|---|---|---|---|---|
| 1 | P01-CAV | PSA | | $66,035 |
| 2 | P01-CAV | PSA | | $66,035 |
| 3 | P01-CAV | Access | $66,035 | |
| 4 | P01-CAV | Access | $66,035 | |
| 5 | P01-Carcass Tracking | Access | $140,500 | |
| 6 | P01-Carcass Tracking | Access | $126,450 | |
| 7 | P01-SIT | PSA | | $140,500 |
| 8 | P01-SIT | Access | $126,450 | |
| 9 | P01-SIT | PSA | | $126,450 |
| 10 | P03-IWST SSS | PSA | | $119,425 |
| 11 | P03-Code 0341 | PSA | | $119,425 |
| 12 | P03-Code 0341 | PSA | | $119,425 |
| 13 | P03-Code 0363 | Access | $119,425 | |
| 14 | P03-Code 0363 | PSA | | $133,475 |
| 15 | P03-Code 0363 | PSA | | $133,475 |
| 16 | P02-DoD Acquisition | PSA | | $126,450 |
| 17 | P02-DoD Acquisition | PSA | | $126,450 |
| 18 | P02-DoD Acquisition | Access | $119,425 | |
| 19 | P02-DoD Acquisition | Access | $119,425 | |
| 20 | P02-DoD Acquisition | Access | $112,400 | |
| 21 | P02-DoD Acquisition | Access | $112,400 | |
| 22 | P02-DoD Acquisition | Access | $112,400 | |
| 23 | P02-DoD Acquisition | Access | $112,400 | |
| | Total Dollars | | $1,333,345 | $1,277,145 |
| | Percentage | | 51.08% | 48.92% |

(*Id*. at 3) The table indicates that where the personnel from PSA would be working in the same labor category as APS's personnel, APS intended for PSA to bill it at the same hourly rate that APS would bill the government for its own personnel, e.g., PSA would bill APS $66,035 annually for a CAV Analyst, which equates to the hourly rate

4

of $33.02 set forth in the contract for this labor category when the annual rate is divided by 2,000 hours and rounded to two places. All of the annual fee rates set forth in the agreement for PSA's personnel equate to the corresponding hourly rate set forth in the contract between APS and the government when the annual fee is divided by 2,000 hours and rounded to two places. The agreement also states that PSA had accepted the same markup on base wages that APS had used in calculating the rates set forth in the contract (R4, tab 10 at 4). Accordingly, the record indicates that APS intended PSA to bill it at the same hourly rates as APS billed the government.

7. On 2 February 2011, the DCAA issued a DCAA Form 1, Notice of Contract Costs Suspended and/or Disapproved to APS, which identified six separate and unrelated items of costs questioned by DCAA (R4, tab 2).

8. Only Item No. 1, relating to PSA's subcontractor costs remains in dispute. Under this item, DCAA disapproved costs totaling $22,236, stating: "APS billed subcontract direct labor hours at prime contract direct labor rates. We calculated the differences between the prime contract direct labor rates and the subcontract direct labor rates and applied the claimed subcontract direct labor hours to the difference." DCAA reviewed the 27 invoices that had been submitted and paid previously and calculated the difference for each invoice to arrive at the total amount disapproved. (R4, tab 2)

9. In a letter dated 10 February 2011, APS responded to the DCAA disapproval. APS acknowledged it had billed its subcontractor's labor hours at the hourly rates set forth in the contract and that this was more than the hourly rate that its subcontractor had charged APS for the hours its personnel had worked. APS explained that PSA had made a mistake in its invoicing and had failed to follow APS's direction to bill it in accordance with the billing rates set forth in their subcontract agreement. APS advised the contracting officer PSA had divided the yearly fee by 2,080 hours instead of the 2,000 hours (a 4% difference) the contract agreement between APS and the government was based on and that PSA had invoiced separately for its personnel's vacation pay instead of incorporating it into the hourly rates PSA billed APS. (R4, tab 3) APS advised it had not included the vacation pay PSA billed it separately, when it billed the government. APS's assertions in this regard are confirmed by the invoices it received from PSA, which show, (1) a 4% difference from the hourly rates included in APS's contract with the government; and (2) a separate line item charge for vacation pay for Marion Green.[4] (R4, tabs 12, 14)

10. PSA's Invoice No. 11, covering the week ending 10 January 2010, for example, includes the following hourly rates for the personnel that worked during the

_____

[4] The record includes only two of PSA's invoices to APS (R4, tabs 12, 14). It does not include all of the invoices PSA submitted to APS.

period covered by the invoice: $57.42, $60.79, $64.17, $31.75 and $67.55 (R4, tab 12 at 2). Increasing these rates by 4% equates to the corresponding contract rates of $59.71, $63.23, $66.74, $33.02 and $70.25 (finding 2). The record indicates APS did not include the separate vacation pay item charge PSA had included in its Invoice No. 11 for Marion Green in its invoice to the government corresponding to the period for the week ending 10 January 2010 (ex. 7, voucher No. 11 at 1-2).

11. In her final decision dated 28 April 2011, the contracting officer agreed with the DCAA, stating: "You have incorrectly billed the government for services that were provided by Professional Services of America (PSA). The amount you billed exceeds the amount that you were billed by PSA for these services. I concur with DCAA findings that these costs are disapproved."[5] (R4, tab 6)

12. APS sought reconsideration of the contracting officer's decision in an email message sent by its representative, Mr. Tyrone Miller, on 28 April 2011. APS reiterated that the hourly rates PSA had charged APS in its invoices did not include allowances for vacation pay, which APS was nevertheless responsible for under its agreement with PSA. Mr. Miller concluded APS's message by stating: "If we are to base your decision on what I am be [sic] billed by PSA I would think it has to be based on the total that I am being billed by them." (R4, tab 7)

13. Under date of 6 May 2011, the contracting officer again denied APS's claim. In her denial the contracting officer stated: "You cannot bill the Government at a rate higher than the rate billed to you by your subcontractor. This is a Time and Material type contract and indirect costs, such as vacation or holiday pay should behave [sic] been built into the direct labor rate." (R4, tab 8)

14. The government maintained its position through the end of appellant's performance of the contract, leading to further disallowances and resulting in a total current claim of $39,785 (notice of appeal, 20 March 2015).

---

[5] The final decision failed to include the appeal rights language mandated by the Contract Disputes Act (41 U.S.C. § 7103(e)) as implemented by FAR 33.211 (a)(4)(v)). We have previously ruled in this appeal that the failure to include the appeal rights language prejudiced appellant, a contractor we described as being an "unknowledgeable contractor," neither aware of the dispute process generally, nor the Board's existence at the time of the decision denying the claim. *Access Personnel Services, Inc.*, ASBCA No. 59900, 16-1 BCA ¶ 36,407.

## DECISION

The government contends that under the plain meaning of the Payments clause, appellant is entitled to be reimbursed only for the hours its subcontractor personnel worked and at the hourly rates the subcontractor billed appellant (gov't br. at 1-2). It argues the Payments clause precludes appellant from billing the government at hourly rates higher than the rates its subcontractor used to bill it. In perhaps the clearest expression of its position, the government asserts: "Under the contract's Payments Clause, specifically FAR 52.232-7(b), APS is entitled to receive reimbursement for the hours worked by its subcontractor at the actual labor rates of its subcontractor." (Gov't br. at 2) Appellant's position is that it is entitled to be paid the hourly rates set forth in the contract for both its own work as well as that of its subcontractor. In this regard appellant asserts:

> [The government] is erroneously attempting to apply
> Section (b) to an area that clearly falls under the purview
> of Section (a) sentence 1, which reads: **(a) *Hourly rate.*
> (1) The amounts shall be computed by multiplying the
> appropriate hourly rates prescribed in the Schedule by
> the number of direct labor hours performed.** This is the
> sole basis of my claim that I be paid at the hourly rates as
> prescribed in my contract.

(App. br. at 2) We hold that both parties have misinterpreted the Payments clause.

In part, we rely on time-honored rules of contract interpretation to resolve this dispute. The starting point for contract interpretation is the language of the written agreement. *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). When interpreting the language of a contract, reasonable meaning must be given all parts of the agreement so as not to render any portion meaningless, or to interpret any provision so as to create a conflict with other provisions of the contract. *Hercules Inc. v. United States*, 292 F.3d 1378, 1380-81 (Fed. Cir. 2002); *Fortec Constructors v. United States*, 760 F.2d 1288, 1292 (Fed. Cir. 1985); *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed. Cir. 1983). The nature of the contract is to be determined by an objective reading of its language, i.e., its plain meaning, not by the parties' characterizations or their subjective intent. *McHugh v. DLT Solutions, Inc.*, 618 F.3d 1375, 1380 (Fed. Cir. 2010); *Valley Apparel, LLC*, ASBCA No. 57606, 12-1 BCA ¶ 35,013 at 172,052. The Federal Circuit permits the use of dictionaries to establish the ordinary or plain meaning of contract terms and does not consider this to constitute impermissible extrinsic evidence. *Teg-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1340 (Fed. Cir. 2006); *see also Vanguard Products Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000) (involving interpretation of patent claim);

7

*Int'l Bus. Mach. Corp. v. United States*, 201 F.3d 1367, 1372 (Fed. Cir. 2000) (involving interpretation of statute).

It should be noted the parties do not dispute the number of hours worked by appellant's subcontractor. The issue is centered on whether appellant is limited to only receiving reimbursement for the hourly labor rates its subcontractor, PSA, billed it. Our response to this question is no because the contract's Payments clause does not state that a contractor will be reimbursed for the hourly rates it is charged by its subcontractor. Instead, it plainly states the government will reimburse the contractor for *costs* of subcontracts. The record does not reflect any dispute regarding whether the vacation pay that appellant was responsible for under the subcontract agreement is a subcontract cost or that it is allowable. In fact, the contracting officer's statement that the hourly rates PSA used in its billing should have included vacation pay, suggests that she recognized such costs are allowable (finding 13). Nor does the record reflect any dispute over appellant's contention that it has not been compensated for the vacation pay for PSA's employees, or that it was obligated to pay it.

Neither the contract, nor the FAR define "reimburse." Accordingly, as we must, we give it its common meaning, which is defined as: "To pay back or compensate (a person) for money spent or for losses or damages incurred." WEBSTER'S II, NEW RIVERSIDE UNIVERSITY DICTIONARY (1988). The problem we have with the government's position is that it ignores entirely, or at best is at odds with the meaning of "reimburse" and the Payments clause's mandate that the contractor be reimbursed for costs of subcontracts. If we were to adopt the government's position, appellant would receive no compensation for the cost of the vacation pay it undisputedly has paid to PSA. There is no language in the Payments clause, or elsewhere in the contract, mandating that appellant develop an hourly labor rate covering all of its subcontract costs to use in billing the government as the contracting officer suggested should have occurred, although the record indicates that this is indeed what appellant intended.[6] (Findings 6, 9, 10) PSA's failure to bill appellant in accordance with appellant's directive interfered with this plan.

There is language in the Payments clause with respect to contractors that requires that an hourly rate, including all direct, fringe benefits, overhead and profit be used when billing the government for the contractors' employees' time, but, when it comes to subcontractors, the version of the Payments clause included in the contract plainly states contractors will be reimbursed for subcontract costs, not hours. We find the government has failed to pay appellant in accordance with the Payments clause and therefore sustain the appeal.

---

[6] The contracting officer's statement is somewhat ironic given that, in essence, this may be what appellant did or was trying to do by charging the hourly labor rates set forth in the contract for its subcontractor's employees (finding 6).

This does not mean, however, that we necessarily agree that appellant is entitled to all of the costs it seeks, for it too, misinterprets the Payments clause. Appellant also disregards the language regarding reimbursement of subcontractor costs. Instead of seeking reimbursement of its subcontract costs, appellant billed the government for its subcontractor's hours, using the same hourly rate set forth in the contract for its employees' services. It is possible the resultant total cost billed to the government would be identical to the reimbursable subcontract cost that appellant is entitled to under the Payments clause, given the adjustments appellant's subcontractor made to the contract's hourly rates to account for the vacation pay separately (findings 9, 10). It is also possible that appellant has under, or over, billed the government for the actual cost of the vacation pay it has paid to its subcontractor. The record, however, does not permit this determination because it does not include all of the invoices PSA submitted to appellant, so we are unable to compare the amount appellant billed the government to what it paid its subcontractor. However, we are not called upon to make this finding, as the appeal was bifurcated to determine entitlement only. The appeal is sustained and returned to the parties for resolution of the quantum to be paid appellant in accordance with our decision. We dismiss the motion for summary judgment as moot.

Dated: 7 September 2017

CHRISTOPHER M. MCNULTY
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59900, Appeal of Access Personnel Services, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals